In the matter of the Long Branch and Sea Shore R. R. Co.

IN THE MATTER OF THE SUPPLEMENTAL APPLICATION OF THE LONG BRANCH AND SEA SHORE RAILROAD COMPANY FOR A STAY OF PROCEEDINGS UNDER THE ACT "FOR THE RELIEF OF CITIZENS ON THE LINE OF ANY RAILROAD THAT HAS OR MAY HEREAFTER FAIL OR NEGLECT TO OPERATE."

1. On the return of an order to show cause, on an original substantive application by petition, the respondent may, notwithstanding the twentieth rule of this court, read affidavits which have not been served; the brevity of the time between the service of the order and the return day not admitting of compliance with the rule.

2. On an application by claimants for the delivery of possession of a railroad which, under the act "for the relief of citizens on the line of any railroad that has or may hereafter fail or neglect to operate," has been placed in the hands of a receiver, they must show not only that they are able and willing to operate the road, but also that they are entitled to possession.

On motion, on supplemental petition and affidavits, for an order directing the respondent to deliver up to the petitioners their road.

Mr. A. Browning and Mr. T. G. Shearman, (of New York,) for the motion.

Mr. Gilchrist, Attorney-General, and Mr. J. E. Lanning, and Mr. R. Allen, contra.

THE CHANCELLOR.

This is a renewal of the application by the Long Branch and Sea Shore Railroad Company, for an order directing the receiver appointed under the act "for the relief of citizens on the line of any railroad that has or may hereafter fail or neglect to operate," to deliver to them their road and rolling stock, and other property in his hands.

The petition states that the company are not only able to

operate their road, but desirous of doing so ; that they have no floating debt to embarrass them, and no arrears of wages owing to employees ; that they have an ample supply of rolling stock for the proper and efficient operation of their road, and that, while they are perfectly solvent, and without any embarrassment from floating debt, yet there is a mortgage, which will become due in 1899, on the road and its appurtenances and the corporate franchises, to secure bonds amounting in the aggregate to $200,000, the interest whereon is payable half-yearly, and the possession of the road and property is necessary to enable them to pay the interest which will become due on the 1st of June next.

The company tender themselves ready to give such full and satisfactory assurances as may be considered by the Chancellor equitable and just, that they can and will, immediately after the restoration of their property, commence and continue to operate their road in all its parts, up to the full requirements of all the contracts and obligations of the company, express or implied.

The motion is opposed by the citizens on whose application the receiver was appointed. They insist that the road and rolling stock are covered by mortgages given by the New Jersey Southern Railroad Company, an insolvent corporation now in the hands of a receiver as such ; that after the lease referred to in the petition, and therein said to have been made to that company by the petitioners, expired, the lessees continued to operate the road on their own account, as tenants from year to year, and that large sums of money were expended by them upon the road and property, and notably in the extension from Spermaceti Cove to Sandy Hook, a distance of about three miles, and building a wharf and pier, and certain houses, &c., there; in short, that by reason of this alleged complication of their affairs the petitioners ought not to be permitted to take charge of their road or rolling stock.

On the argument, objection was made to the reading of affidavits, which were produced on the part of the opponents of the motion. No copy of them had been served. It was

insisted by the counsel of the petitioners, that according to the twentieth rule of this court, those affidavits could not be used unless a copy of them had been served on the petitioners or their solicitor, at least four days before the argument. That rule could not, under the circumstances, be applied to this motion. It appeared that the entire time between the service of the order to show cause and the time fixed for the hearing, had been occupied in preparing the affidavits. It was therefore impossible to serve them according to the rule. It was equally impracticable to take depositions instead of them on notice, for there were but four days between the granting of the order and the day fixed for the argument. On their application for the order, the petitioners sought to fix a time for the hearing still earlier by two days, but the engagements of the court would not permit. The affidavits were admitted, subject to objection as to competency and to the right of the petitioners to produce counter affidavits in reply. They, however, asked no opportunity to take answering affidavits. The practice adopted in this case, on this head, is unquestionably correct. To have excluded the affidavits under the circumstances, would have been to deny the opponents of the motion the opportunity of shewing cause—of doing the very thing the order called on them to do.

The statute under which the receiver was appointed was passed to provide for an extraordinary exigency. The public, along the line of the Long Branch and Sea Shore, and New Jersey Southern Railroads, had been and were greatly incommoded by the failure of the owners of those roads to operate them. Not only had daily trains ceased, but for weeks the roads had not been operated at all. The main object of the act, as evidenced by its title and the provisions of the first section, was to relieve the public from the embarrassment and inconvenience occasioned by this want of accustomed and necessary traveling facilities. The act contemplates the exercise of extraordinary powers, in the granting of which, the legislature may be presumed to have acted on the assumption that the grant of franchises to a railroad

company is primarily to provide a highway for the public, and that there is an implied contract, on the part of the company, to build, equip, and operate their road for the use of the public, and that if, having built and equipped it, they neglect or refuse to perform this contract, its performance may be specifically enforced in the manner provided by the act.

The act vests in the Chancellor a discretion as to the length of time the operation of the road by the receiver shall continue. That discretion is to be exercised in the interest of the public, and is to be controlled by the circumstances of the case. As was said on the former application, whenever I shall be satisfied that the company owning the road is able and willing to operate it, it will be delivered over to them. But this discretion is not to be limited to a judicial decision upon the case which may be presented on the petition, and such evidence in opposition as may be presented by the citizens on whose application the proceedings may have been instituted. Those proceedings are not an action between those citizens, as complainants, and the company, as defendants. Nor is this present application a suit between the company, as petitioners, and the receiver, as respondent. The latter is an officer of this court, in no wise charged with the defence of its proceedings here. There is no defendant or respondent in this application. It is an application to the discretion of the Chancellor. Whether it will be successful or not, will not necessarily depend on the evidence adduced on the argument. There is other legitimate evidence to which the Chancellor may have recourse to direct him in the exercise of that discretion, and if from this it should appear doubtful whether the petition ought to be granted, he should deny it. The petitioners claim to be the owners of the road. They state that it was leased by them to the New·Jersey Southern Railroad Company by a lease which has expired. Notice was given to them to produce that lease, but they did not see fit to do so. That the road was operated by the New Jersey Southern Railroad Company

up to the time when the property of that company passed out of its hands into those of the trustees of its first mortgage bond holders, there is no doubt. It is not clear what the relationship between the two companies then was, but it would seem from the evidence furnished by the reports of the Long Branch and Sea Shore Railroad Company to the legislature, in pursuance of the requirements of law, of which I have taken judicial notice, that that company was not the owner of the road for the possession of which it applies. By the statement for 1870, the president of the company reports on oath the amount of its capital stock, ($171,800,) the amount of its mortgage debt, ($200,000,) and the cost of the road and equipment, ($398,863.38,) and adds: "The road is operated by the New Jersey Southern Railroad Company, and its receipts and expenditures are included in the report of that company." The same gentleman, as president of the New Jersey Southern Railroad Company, reported on oath, at the same time, in the statement of that company for that year, that that company owned capital stock of the Long Branch and Sea Shore Railroad Company to the amount of $147,600. The entire amount of that capital stock was, as above stated, $171,800. The statement of the Long Branch and Sea Shore Railroad Company for 1871, reports the amount of the capital stock and mortgage debt as above, but omits the statement of the cost of the road and equipment, and adds: "The road is leased under the authority of the legislature to and operated by the New Jersey Southern Railroad Company, and its receipts and expenditures are included in the report of that company. Separate accounts not being kept, no further report can be made."

The statement for 1872, in like manner reports the capital stock and mortgage debt as above, and omits the cost of road and equipments, as before. It adds: "The road is owned and operated by the New Jersey Southern Railroad Company, and this company can make no report as to accidents, receipts, or expenditures." In the statement for 1873, the president, after reporting the amount of the capital stock and mortgage

debt, says: "As the road has, during the year ending December 31st, 1873, been operated by the New Jersey Southern Railroad Company, I would respectfully refer you to the reports made by that company, for the details of receipts, expenditures, accidents, &c." It will be seen then, that by these statements for the years 1870, 1871, 1872, and 1873, it appears that the New Jersey Southern Railroad Company are the owners of capital stock of the Long Branch and Sea Shore Railroad Company, to the amount of $147,600, the whole amount of the stock being $171,800; that the former company has, during all that time, operated the road, and that in 1872 it owned the road. The fact that, according to the statements referred to, the Long Branch and Sea Shore Railroad Company has not, during that period, received any compensation for the use of the road, is consistent with the allegation that the New Jersey Southern Railroad Company were and are the owners of the road, as is also the fact that after the latter company ceased to operate the road, no attempt was made to operate it for weeks, nor at all until after the appointment of a receiver. The responsibility of delivering over the road to the persons entitled to possession, is devolved upon this court. The petitioners were not in possession when the receiver was appointed. There appear to be grave doubts as to their right to possession. Before granting this petition, I must be satisfied that they are not only able and willing to operate the road, but have the right to do so.

The motion is denied, but without prejudice to any future application in the premises.